UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>MELVIN CORBINE and RICARDO BARRAGAN,<br><br>　　　　　　Defendant. | 5:20-CR-50052-JLV<br><br>REPORT AND RECOMMENDATION |

　　　　Pending are Defendants' Motions to Suppress (Docs. 44, 46).[1]  A hearing was held on Wednesday, January 6, 2021.  Mr. Corbine was personally present and represented by his attorney of record, Thomas Diggins.  Mr. Barragan was personally present and represented by his attorney of record, Conor Duffy.  The Government was represented by the Assistant United States Attorney Kathryn Rich.  Three witnesses testified at the hearing, and five exhibits were received into evidence.  Supplemental briefing concluded on 2/23/2021.  Based on careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

---

[1] Doc. 46 is Mr. Corbine's motion for joinder to Mr. Barragan's motion to suppress. That motion for joinder is hereby granted and the court will consider both defendant's arguments in this report and recommendation.

1

## RECOMMENDATION

It is respectfully recommended that the Motion to Suppress (Doc. 44) be denied.

## JURISDICTION

Both defendants are charged in an Indictment with Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841 (b)(1)(A) and Possession of a Controlled Substance with the Intent to Distribute in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841 (b)(1)(B). The pending Motions were referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and United States District Judge Jeffrey L. Viken's Standing Order dated April 1, 2018.

## FACTUAL BACKGROUND

Ricardo Barragan first came to the attention of the law enforcement in 2018 when an agent with the Unified Narcotics Enforcement Team (UNET) received information he was transporting methamphetamine from Denver, Colorado to Rapid City, South Dakota.  (Doc. 63 at 62-63.)  Then, in May and June of 2019, law enforcement worked with a confidential informant to conduct two controlled drug purchases from Melvin Corbine.  Id. at 63.  As part of one of these purchases, Mr. Corbine had the informant take him to a residence on Outlook Circle to obtain methamphetamine to sell to the informant.  Id.  Law enforcement later obtained a search warrant for the residence.  Id.

Law enforcement first came into contact with Mr. Barragan during the execution of a search warrant at the residence on Outlook Circle in July of 2019. Id. During the search, law enforcement discovered roughly two ounces of methamphetamine, bulk cash, and a digital scale. Id. at 64.

In November of 2019, law enforcement spoke again to a confidential informant regarding Mr. Corbine and Mr. Barragan. Id. at 64-65. The informant told law enforcement he/she received methamphetamine from Mr. Corbine from approximately February to March of 2019. Id. at 65. The informant also stated that after this time, their source of methamphetamine shifted to Mr. Barragan from approximately March to June of 2019. Id.

Based upon information obtained from this investigation, UNET Agent and Rapid City Police Department Detective Cade Bloomenrader acquired a search warrant in February, 2020 to track the vehicles of Mr. Barragan and his wife, Jennika Bettelyoun. Id. at 67. A short while later, both vehicles ended up in the Denver area at the same time. Id. The vehicles were later noted to be traveling back to Rapid City. Id. at 68.

On March 8th, 2020, Detective Bloomenrader conducted a briefing with South Dakota Highway Patrol Troopers and other UNET agents. Id. The purpose of the briefing was to provide some background on the investigation and inform the other officers of the vehicle being driven by either Mr. Corbine or Mr. Barrigan. Id. Among those in attendance were South Dakota State Troopers Tyler Jackson and Dennis Mez. Id. The Troopers were informed by Special Agent Bloomenrader that the individual they were looking for was one

of the defendants, Ricardo Barragan, who was believed to be transporting narcotics on Highway 16 in a silver Chevrolet Silverado pickup truck. Id. at 8-9.

After the debriefing, Trooper Jackson and Trooper Mez traveled to and sat stationary at mile marker 59 on Highway 16 to wait for the vehicle. Id. at 9-10. The vehicle was first spotted by other officers, who then conveyed that information to Troopers Jackson and Mez to conduct the stop.[2] Id. at 10. As the vehicle passed Trooper Jackson, he noticed the top part of the vehicle's license plate was obscured by an after-market back up camera so that the issuing state could not be read. Id. at 11, see Doc. 62, Ex. 3. Trooper Jackson testified that he believed the vehicle to be in violation of SDCL § 32-5-98, which requires the license plate to be conspicuously displayed.[3]

Trooper Jackson then initiated a traffic stop of the vehicle. Id. at 16. As he approached the vehicle, he testified that he smelled the odor of raw marijuana. Id. By this time, Trooper Mez and Sergeant Brian Swetts had arrived on the scene. Id. at 20. Together, the three conducted a search of the vehicle. Id. Within the vehicle, the officers found approximately 523 grams of cocaine; approximately 1.5 ounces of marijuana; two grams of hash oil; a

---

[2] Law enforcement had Troopers Jackson and Mez conduct the stop to preserve the undercover status of the unmarked UNET vehicles and as a safety measure. Troopers Jackson and Mez were in uniform and in a marked vehicle, which appears more like a normal traffic stop instead of a drug investigation.
[3] The court observed Trooper Jackson's testimony at the suppression hearing on this motion and finds it to be credible.

methamphetamine pipe and small baggie, both of which tested presumptively positive for methamphetamine; and five cell phones.  Id, see Doc. 62, Ex. 2.

## DISCUSSION

Mr. Barragan argues the evidence obtained from the search of the vehicle should be suppressed because there existed no probable cause or reasonable suspicion for the traffic stop.  (Doc. 45 at p. 3).  Specifically, he argues 1) SDCL § 32-5-98 requires only the numbers of the license plate be visible; 2) Trooper Jackson's reliance on SDCL § 32-5-98 was an objectively unreasonable mistake of law; and 3) the information relied upon in the UNET investigation was too stale and non-particularized to give law enforcement reasonable suspicion.  (Doc. 45 at p. 3, Doc. 67 at pp. 2, 6).  Mr. Corbine joins in the arguments put forth by Mr. Barragan.  (Doc. 68 at p. 1).

The government argues 1) SDCL § 32-5-98's requirement that license plates be "conspicuously displayed" also includes the name of the issuing state and 2) even if that statute does not require visibility of the name of the issuing state, Trooper Jackson's mistake of law was objectively reasonable.  (Doc 53 at 5-6.)

The Fourth Amendment of the U.S. Constitution provides the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.  In terms of the Fourth Amendment, the law

5

is settled that "a traffic stop entails a seizure of the driver 'even though the purpose of the stop is limited and the resulting detention quite brief.'" Brendlin v. California, 551 U.S. 249, 255 (2007) (citing Delaware v. Prouse, 440 U.S. 648, 653 (1979)). "For purposes of constitutional analysis, a traffic stop is characterized as an investigative detention, rather than a custodial arrest. . . . As such, a traffic stop is governed by the principles of Terry v. Ohio . . . ." United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001) (citing Berkemer v. McCarty, 468 U.S. 420, 439 (1984); Terry v. Ohio, 392 U.S. 1 (1968)).

Therefore, to be valid pursuant to the Fourth Amendment, a traffic stop "must be supported by reasonable suspicion or probable cause." United States v. Houston, 548 F.3d 1151, 1153 (8th Cir. 2008) (internal citations omitted).

> A law enforcement officer has reasonable suspicion when the officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed. The more rigorous standard of probable cause exists when the totality of the circumstances justifies the belief that a crime has been committed and the person being seized committed it.

Id. (internal quotations omitted). "An officer has probable cause to conduct a traffic stop when he observes even a minor traffic violation. This is true even if a valid traffic stop is a pretext for other investigation." United States v. Sallis, 507 F.3d 646, 649 (8th Cir. 2007) (internal quotations omitted). Additionally, the officer's interpretation of the law need not be perfect to justify the warrantless stop of a vehicle. "[G]rounds for a traffic stop may rest on an officer's mistake of law or fact, provided that the mistake is objectively

6

reasonable." United States v. Farlee, 427 F.Supp.3d 1123, 1126 (2019) (citing Heien v. North Carolina, 574 U.S. 54, 60-61, 135 S.Ct. 530 (2014).

The relevant South Dakota statutes include:

**32-5-98. Operation of motor vehicle without visible license plates prohibited-- Removal of unauthorized plates--Violation as misdemeanor.** Except as otherwise specifically provided, no person may operate or drive a motor vehicle on the public highways of this state unless the vehicle has a distinctive number assigned to it by the department, and two number plates, bearing the number conspicuously displayed, horizontally and in an upright position, one on the front and one on the rear of the vehicle, each securely fastened. The plates shall at all times, as far as is reasonably possible, be kept clear and free of mud, ice, or snow so as to be clearly visible. All number plates, markers, or stamps evidencing registration or licensing of any vehicle in this or any foreign state, territory, district, or possession and any plate, marker, or stamp used in substitution for or in lieu of the number plates required by this section by virtue of any law or executive order for any prior year or years shall be removed from such vehicles.

**32-5-46. Vehicles owned by nonresidents--Compliance with laws of foreign state-- Display of foreign license plates.** The provisions of this chapter, except as otherwise specifically provided, relative to registration, payment of license fees, and display of registration numbers do not apply to any motor vehicles owned by a nonresident of this state, if the owner has complied with the provisions of the law of the state of which he is a resident, relative to the registration thereof and the display of a registration number plate or plates thereon. The owner shall conspicuously display his registration number plate or plates as required by the law of this state.

Trooper Jackson testified that he relied on a violation of SDCL § 32-5-98 to make the traffic stop. Specifically, he testified that he stopped the vehicle because was unable to see the issuing state on the rear license plate. Neither defendant contests the fact that the issuing state was not visible on the plate, but instead argue that SDCL § 32-5-98 only requires the numbers of the

7

license plate to be visible and that it was objectively unreasonable for Trooper Jackson to rely on the statute for the traffic stop.

The court need not determine whether SDCL § 32-5-98 actually requires the name of the issuing state to be visible because an officer's mistake of law provides probable cause for a traffic stop if the mistake was "objectively reasonable." Farlee, 427 F.Supp.3d at 1126 (2019) (citing Heien v. North Carolina, 574 U.S. 54, 60-61, 135 S.Ct. 530 (2014).  The issue is whether it was objectively reasonable for Trooper Jackson to conclude that the defendants failed to "conspicuously display" their license plate by having the issuing state hidden from view.

In the absence of a "clear and unambiguous" statute, the Eighth Circuit has set out a number of factors to determine whether an officer's mistake of law was objectively reasonable.  State v. Wright, 791 N.W.2d 791, 799 (2010) ("Given the clear and unambiguous language of SDCL 32–17–7, Trooper Biehl's mistake of law was not objectively reasonable.)  Those non-exhaustive factors include the drafting history of the statute, prior enforcement of the statute, the law enforcement officer's training regarding the statute, and prior judicial interpretations of the statute.  United States v. Martin, 411 F.3d 998, 1001 (2005).

First, we must determine whether the language in SDCL § 32-5-98 is "clear and unambiguous."  Wright,  791 N.W.2d at 799 (2010).  The defendants would have the court read the first sentence of the statute as clearly requiring only the number be visible.  The relevant language of the statute reads "…no

8

person may operate or drive a motor vehicle on the public highways of this state unless the vehicle has a distinctive number assigned to it by the department, <u>and two number plates, bearing the number conspicuously displayed</u>...." SDCL § 32-5-98 (emphasis added).  Although one could read the statute as requiring only the number be conspicuously displayed, as the defendant does, it is equally possible to read the statute as requiring the license plate itself to be conspicuously displayed.  As such, the court finds the statute is not "clear and unambiguous."

    The next issue is to determine whether, upon consideration of the factors laid out in <u>Martin</u>, Trooper Jackson's interpretation of the statute was objectively reasonable.  The first factor to consider is the drafting history of the statute.  SDCL § 32-5-98 has changed little since its introduction in 1939. At that time, the statute was at § 44.0113 and was titled "Number plate conspicuously displayed."  This statute contained language identical to the current version of the statute, in that it required "two number plates, bearing such number conspicuously displayed."  Although the language itself does not provide any guidance, the court finds the title of the section at this time to be illustrative of the intent that the license plate itself be conspicuously displayed, not just the numbers displayed thereon.  There have been no other substantial revisions to the relevant section of this statute.  Therefore, the court finds this factor weighs in favor of the determination that Trooper Jackson's interpretation was objectively reasonable.

The next factor is prior enforcement of the statute. Trooper Jackson testified that "[c]onspicuous display of a license plate is a very common traffic stop I make." (Doc. 63 at p. 16). Specifically, he testified that he has stopped vehicle in the past for attaching a back-up camera or a license plate frame that covers the issuing state. Id. at p. 26.

Trooper Jackson also testified as to the importance of being able to see the name of the issuing state. Id. at p. 14. If law enforcement were to investigate a vehicle without knowing the issuing state, they would have to run the number out of every state until they found the right vehicle. Id. Additionally, if law enforcement recognized a foreign plate but could not tell the issuing state, they would have no way of knowing whether the vehicle was in compliance with SDCL § 32-5-46, the above-cited foreign license plate statute. Therefore, this factor also weighs in favor of objective reasonability.

Trooper Jackson testified that he has received no training regarding license plate frames or back-up cameras covering the issuing state of the license plate. Id. at 26. This factor weighs neither for nor against objective reasonability.

Lastly, the court notes that there have been no prior judicial interpretations of the enforcement of this statute in this manner. Although there are no controlling cases directly on point, there are a couple that discuss SDCL § 32-5-98. See United States v. Farlee, 427 F.Supp.3d 1123 (D.S.D. 2019) (officer had probable cause when license plate was obscured by mud); United States v. Peralez, 526 F.3d 1115 (8th Cir. 2008) (officer had probable

cause to stop vehicle when license plate was obscured by a metal bar from a trailer attachment).

Since the statute has not been interpreted in a manner contrary to Trooper Jackson's interpretation, this factor also weighs in favor of objective reasonability. "…Farlee has not cited—and this Court has not found—any case from the Supreme Court of South Dakota…interpreting § 32-5-98 in a way that conflicts with Sergeant Marruffo's belief that Farlee violated the statute. Farlee, 427 F.Supp.3d at 1127-28 (citing Heien, 574 U.S. at 68, 135 S.Ct. 530 ("noting that a state's appellate courts had never construed a state statute at issue when deciding that the officer's mistaken interpretation of the statute was reasonable").

Upon consideration of the factors in Martin, the court finds Trooper Jackson's interpretation of SDCL § 32-5-98 was objectively reasonable. The court need not determine whether Trooper Jackson had separate reasonable suspicion from the ongoing investigation of Mr. Corbine and Mr. Barragan, as the probable cause created by the objectively reasonable belief that a traffic violation occurred was sufficient to justify the stop of the defendants' vehicle.

The next issue is whether the search of the vehicle was supported by probable cause.[4] "It is well settled that a warrantless search of an automobile is not unreasonable if law enforcement officers have probable cause to believe that the vehicle contains evidence of criminal activity." United States v. Daniel,

---

[4] Although neither defendant contests the search of the vehicle, the court will discuss the issue in the interest of completeness.

11

809 F.3d 447 (8th Cir. 2016) (citing United States v. Ross, 456 U.S. 798, 823-24 (1982)).  "Probable cause exists when the facts available to an officer would warrant a person of reasonable caution to believe that contraband or other evidence of a crime is present."  Daniel, 809 F.3d at 448-449 (internal citations omitted).  "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."  United States v. Englehart, 811 F.3d 1034, 1042 (8th Cir. 2016) (internal citations omitted).

Upon approaching the vehicle, Trooper Jackson testified he could smell raw marijuana inside the vehicle.  (Doc. 63 at p. 16.)  The odor of an illegal drug, such as marijuana, provides probable cause to search an entire vehicle for drugs.  United States v. Mayfield, 678 Fed. Appx. 437, 439 (8th Cir. 2017) ("The parties agree that the odor of marijuana emanating from a vehicle provides probable cause to search the vehicle[.]")  The search of the vehicle yielded, among other items, about 1.5 ounces of marijuana.  (Doc. 63 at 20.)  As such, the search of the vehicle was supported by probable cause.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Suppress (Doc. 44) be denied.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely

objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

    DATED this 27th day of April, 2021.

                                   BY THE COURT:

                                   *[signature]*
                                   DANETA WOLLMANN
                                   United States Magistrate Judge