UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>MELVIN CORBINE and<br>RICARDO BARRAGAN,<br><br>　　　　　　Defendants. | CR. 20-50052-01 & 02-JLV<br><br><br>ORDER |

**INTRODUCTION**

A grand jury indicted defendants Melvin Corbine and Ricardo Barragan for conspiracy to distribute and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A), and conspiracy to distribute and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B). (Docket 1). Defendant Ricardo Barragan filed a motion to suppress evidence obtained by law enforcement as a result of a March 8, 2020, traffic stop. (Docket 44). Defendant Melvin Corbine moved to join in the motion. (Docket 46). The motion was referred to Magistrate Judge Daneta Wollmann pursuant to 28 U.S.C. § 636(b)(1)(B) and the court's April 1, 2018, standing order. The magistrate judge conducted an evidentiary hearing on January 6, 2021. (Docket 59). At the conclusion of the hearing, Judge Wollmann ordered the parties to submit post-hearing briefing on the matter. (Docket 61). Defendants each submitted their own briefs in support of suppression. (Dockets 67 &

68). The government submitted a memorandum opposing suppression. (Docket 69). On April 27, 2021, Judge Wollmann filed a report and recommendation concluding the motion to suppress should be denied. (Docket 71). Defendants jointly filed objections to the report and recommendation. (Docket 79).

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. See also Fed. R. Crim. P. 59(b)(3).

The court reviewed *de novo* those portions of the report and recommendation to which objections were filed, the transcript of the suppression hearing and the parties' pre- and post-hearing briefing. See Dockets 44-46, 53, 63, 67-69, 71 & 79. For the reasons given below, the court sustains defendants' objections and adopts in part and rejects in part the report and recommendation.

**FACTS**

Defendants do not object to the factual background in the report and recommendation. (Docket 79 at p. 2). For purposes of this order, the court adopts and incorporates the factual background recited in the report and

2

recommendation (Docket 71 at pp. 2-5), supplementing it in the analysis below with additional factual details drawn from the transcript of the January 6, 2021, evidentiary hearing where the court deems it helpful.

## ANALYSIS

Defendants seek the suppression of all evidence derived from a March 8, 2020, traffic stop of a vehicle driven by Mr. Corbine and in which Mr. Barragan was a passenger, including various quantities of drugs, drug paraphernalia, multiple cellular phones and money-transfer receipts. See Docket 45 at p. 1. They assert the traffic stop violated Mr. Corbine's and Mr. Barragan's Fourth Amendment right to be free from unreasonable searches and seizures and that the evidence is, therefore, inadmissible and should be suppressed as fruit of the poisonous tree. See Docket 45 at p. 2; Wong Sun v. United States, 371 U.S. 471 (1963).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of" the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809-10 (1996). In order not to run afoul of the Fourth Amendment, a traffic stop must therefore "be supported by probable cause or reasonable suspicion." United States v. Gordon, 741 F.3d 872, 876 (8th Cir. 2013).

Probable cause exists when an officer has an objectively reasonable basis to believe the driver has committed a traffic violation. Id. at 876. "Any traffic violation, however minor, provides probable cause for a traffic stop." United States v. Adler, 590 F.3d 581, 583 (8th Cir. 2009) (internal quotation omitted). "This is true even if a valid traffic stop is a pretext for other investigation." United States v. Sallis, 507 F.3d 646, 649 (8th Cir. 2007) (internal quotations omitted). Reasonable suspicion exists when an officer is "aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." Gordon, 741 F.3d at 876 (internal quotations omitted).

"[I]f an officer makes a traffic stop based on a mistake of law, the legal determination of whether probable cause or reasonable suspicion existed for the stop is judged by whether the mistake of law was an objectively reasonable one." United States v. Washington, 455 F.3d 824, 827 (8th Cir. 2006) (internal quotation omitted); see also United States v. Smart, 393 F.3d 767, 770 (8th Cir. 2005) (stating "the validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances, and in mistake cases the question is simply whether the mistake, whether of law or fact, was an objectively reasonable one"). In mistake cases, a law enforcement officer's "*subjective* good faith is not sufficient to justify the stop . . . . Any mistake of law that results in a search or seizure . . . must be *objectively* reasonable . . . ." United States v. Martin, 411 F.3d 998, 1001 (8th Cir. 2005). "Where there is a

4

basis in state law for an officer's action and some ambiguity or state custom that caused the officer to make the mistake, it may be objectively reasonable." Washington, 455 F.3d at 828.  "However, in the absence of such evidence, officers cannot act upon misunderstandings of clear statutes or, worse yet, their own notions of what the law ought to be." Id.

At issue is the constitutionality of the March 8, 2020, stop.  Specifically, the issue is whether the stop was permissible under the Fourth Amendment because: (1) Trooper Tyler Jackson had probable cause to believe Mr. Corbine, who was operating the vehicle at the time of the stop, had violated SDCL § 32-5-98, or (2) Trooper Jackson had reasonable suspicion the vehicle contained illegal narcotics at the time he initiated the stop based on his personal observations of the vehicle and information he had received during a drug task force debrief earlier that day which connected the vehicle to an ongoing investigation.

I.      **Probable Cause Based on a Violation of SDCL § 32-5-98**

Trooper Jackson testified he relied on SDCL § 32-5-98 to conduct the March 8, 2020, traffic stop. (Docket 63 at p. 14).  The statute reads in pertinent part:

> **32-5-98.  Operation of motor vehicle without visible license plates prohibited-- Removal of unauthorized plates-- Violation as misdemeanor.**
>
> Except as otherwise specifically provided, no person may operate or drive a motor vehicle on the public highways of this state unless the vehicle has a distinctive number assigned to it by the department, and two number plates, bearing the number

5

> conspicuously displayed, horizontally and in an upright position, one on the front and one on the rear of the vehicle, each securely fastened. The plates shall at all times, as far as is reasonably possible, be kept clear and free of mud, ice, or snow so as to be clearly visible. All number plates, markers, or stamps evidencing registration or licensing of any vehicle in this or any foreign state, territory, district, or possession and any plate, marker, or stamp used in substitution for or in lieu of the number plates required by this section by virtue of any law or executive order for any prior year or years shall be removed from such vehicles. . . .

SDCL § 32-5-98. Trooper Jackson's interpretation of § 32-5-98, which he admittedly relied on the statute's third sentence in forming, was that it requires "all mark[er]s, numbers, and stickers to be fully visible on the front and the rear of the vehicles," including the name of the issuing state. (Docket 63 at pp. 14 & 24-25). He believed Mr. Corbine, the driver of the vehicle at the time, had violated § 32-5-98 because an after-market backup camera installed on the rear of the vehicle "cover[ed] up the state" name on the rear plate. (Docket 63 at p. 15).

The threshold question is whether SDCL § 32-5-98 is a clear and unambiguous statute. See Washington, 455 F.3d at 828. If it is not, and if Trooper Jackson was mistaken in his interpretation of the statute which he used as the basis for conducting the March 8 traffic stop, then the question is whether the stop was nevertheless permissible because Trooper Jackson's mistake of law was objectively reasonable.

SDCL § 32-5-98 serves two purposes: to establish, first, that the operation of a motor vehicle without visible license plates is prohibited and, second, that the failure to remove unauthorized plates is also prohibited. The

first two sentences of the statute explicate what it means to operate a motor vehicle with visible license plates so as to comply with the statute.  The third sentence expounds on what items must be removed from a vehicle so as to comply with the statute.

Nowhere does the statute explicitly discuss the name of the issuing state, let alone whether or to what extent the name of the issuing state must be visible.  The third sentence, in particular, provides no support for the assertion state law requires the unobstructed display of the name of the issuing state on license plates because, even if the state name were a "marker," the sentence is solely concerned with what may *not*, not what must, be displayed.  Furthermore, any extrapolation of the meaning of the second sentence's clear mandate that "plates shall at all times, as far as is reasonably possible, be kept clear and free of mud, ice, or snow," beyond that of its plain text is groundless and would be improper.  SDCL § 32-5-98.

The first sentence is admittedly not as clear as the second and third.  It requires a vehicle to have two number plates, one on the front and one on the rear of the vehicle.  It also clearly requires that both plates be securely fastened.  The court believes it requires both plates to bear the vehicle's assigned number, and that the number on each plate must be displayed conspicuously, horizontally and in an upright position.  However, the court recognizes that, while perhaps it would not be an entirely grammatically sound interpretation, the sentence could be understood as requiring both plates to be

7

affixed horizontally and in an upright position and only the numbers on the plates to be conspicuously displayed. Accordingly, the court finds the statute is not entirely clear and unambiguous.

However, given the punctuation, it would take a tortured reading of the first sentence to interpret the phrase "conspicuously displayed" as modifying or describing anything other than how the number on each plate must appear. There is certainly no basis for the inference that the name of the issuing state must be conspicuously displayed. After all, neither the statute as a whole nor its first sentence make any mention whatsoever of the name of the issuing state, let alone whether or to what extent it must be visible. Therefore, the court finds Trooper Jackson made a mistake of law. Because there is no ambiguity that the only thing § 32-5-98 requires to be "conspicuously displayed" is the number on each of a vehicle's license plates, and because there is no other basis in state law for Trooper Jackson's interpretation or state custom or training he received that supports his interpretation, the court finds Trooper Jackson's mistake of law was not objectively reasonable. Trooper Jackson did not have probable cause to conduct the March 8, 2020, traffic stop based on a violation of SDCL § 32-5-98.

## II.     Reasonable Suspicion Based on Drug Investigation

Because Trooper Jackson did not have probable cause to conduct the March 8, 2020, traffic stop based on a violation of SDCL § 32-5-98, the question is whether the stop was nevertheless constitutional because Trooper

8

Jackson had reasonable suspicion the vehicle contained illegal narcotics at the time he initiated the stop.

On the morning of March 8, 2020, Trooper Jackson attended a drug task force debrief held by Detective Cade Bloomenrader during which Detective Bloomenrader discussed an ongoing investigation of Mr. Barragan and Mr. Corbine. (Docket 63 at pp. 7-8). According to Detective Bloomenrader, he told those in attendance that, in 2018, another agent had received information from a source who alleged Mr. Barragan was transporting methamphetamine from the Denver area to Rapid City. Id. at pp. 62-63. In 2019, law enforcement conducted two controlled purchases of methamphetamine from Mr. Corbine, one in May and the other in June. Id. at p. 63. Detective Bloomenrader's first contact with Mr. Barragan occurred subsequently in July of 2019 during the execution of a search warrant at a residence in Rapid City where one of the previous controlled purchases involving Mr. Corbine had been conducted. Id. at p. 62. Mr. Barragan was present at the residence at the time of the search, during which law enforcement recovered items connected with drug distribution. Id. at pp. 63-64. In November 2019, another source told law enforcement they had purchased methamphetamine from Mr. Corbine for a short period from February to March of 2019. Id. at pp. 64-65. The source stated they subsequently had received methamphetamine from Mr. Barragan for a short time from roughly March to June of 2019. Id. at p. 65. In February 2020, law enforcement received a state warrant to electronically track two

vehicles belonging to Mr. Barragan and his wife. Id. at p. 67. A short time before March 8, 2020, Detective Bloomenrader tracked both vehicles to Denver. Id. On March 8, 2020, one of those vehicles appeared to be returning to Rapid City. Id. at p. 68. Detective Bloomenrader testified he had seen Mr. Corbine driving the vehicle to Denver, and that he believed "at least Mr. Barragan was with the vehicle" as it was returning to Rapid City on March 8. Id. at pp. 68-69. Trooper Jackson testified that, based on the information he received from Detective Bloomenrader at the debrief, he left the debrief with the understanding a "silver pickup, a Chevy Silverado, was traveling back from Denver that was occupied by Ricardo Barragan, which was believed to contain narcotics of some degree." Id. at p. 8.

Reasonable suspicion exists when an officer is "aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." Gordon, 741 F.3d at 876 (internal quotations omitted). When a stop is conducted in the context of an investigation by a team of officers, however, "the issue is whether all the information known to the team provided specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the investigative stop." United States v. Collins, 883 F.3d 1029, 1032 (8th Cir. 2018) (internal quotations omitted). In evaluating whether a stop was supported by reasonable suspicion, the court considers "'the totality of the circumstances—the whole picture.'" United States v. Winters, 491 F.3d 918,

921-22 (8th Cir. 2007) (quoting United States v. Sokolow, 490 U.S. 1, 8 (1989)). Reasonable suspicion must exist at the time a stop is made, and information upon which a stop is made may grow stale with the passage of time.

Circuit case law considering staleness has arisen primarily in the context of courts' assessment of the probable cause standard, but it is nevertheless informative in the context of reasonable suspicion. Specifically, in the context of determining whether probable cause exists for the issuance of warrants in ongoing narcotics operations, the United States Court of Appeals for the Eighth Circuit advised "[t]here is no bright-line test for determining when information is stale." United States v. Jeanetta, 533 F.3d 651, 655 (8th Cir. 2008) (internal quotation omitted). "In investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale." Id. (internal quotations omitted). The "timeliness of the information depends on the circumstances of the case, including the nature of the crime under investigation and the property sought in the search." United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005). The passage of time is less important "when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." United States v. Johnson, 848 F.3d 872, 877 (8th Cir. 2017) (internal quotations omitted).

When the Eighth Circuit found that information which is more than several months old is not stale, invariably, the cases have involved suspected

11

criminal activity of an ongoing nature and additional, more recent corroborating information.  See e.g., United States v. Lemon, 590 F.3d 612, 614-15 (8th Cir. 2010) (finding eighteen-month-old information the defendant traded child pornography not stale when combined with law enforcement's "explanation that [the defendant's] behavior [during that time] was indicative of a preferential collector who would maintain his collection for a long period of time" and further corroborated by "evidence that the IP address and . . . screen name" the defendant used to trade child pornography were still active just a few months prior to the issuance of a warrant); United States v. Kattaria, 553 F.3d 1171, 1176 (8th Cir. 2009) (finding two-year-old information that the defendant had a marijuana grow operation in the basement of his residence not stale where it was corroborated in the couple months just prior to the issuance of a warrant by law enforcement's check of utility records at the residence which "showed recent, abnormally high electric power consumption"); United States v. Nieman, 520 F.3d 834, 839 (8th Cir. 2008) (finding information from an "investigation into drug trafficking at [the defendant's] residence . . . collected over several years" not stale when it was corroborated by "a controlled buy of methamphetamine from the defendant at his residence," directed and observed by law enforcement, "only one day before [law enforcement] applied for [a] search warrant"); United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995) (finding information in a case alleging possession of a firearm by a prohibited person that was four years old not stale when it was "augmented

and confirmed" by additional testimonial evidence just "four months prior to the execution of [a] warrant" that the defendant "continued to carry [a firearm] in his briefcase and store [] additional firearms in [a] safe"); United States v. Luloff, 15 F.3d 763, 767 (8th Cir. 1994) (finding information of drug transactions that was more than a year old not stale when combined with additional, corroborating evidence from confidential informants "showing that [the defendant] continued to engage in drug trafficking" continuously from the time of the earlier information "until the time of the search").

In this case, law enforcement may have suspected criminal activity of an ongoing nature, as indicated by the offenses with which Mr. Barragan and Mr. Corbine are charged, but there was no recent corroborating evidence presented which would support such a suspicion or, more importantly, combine with the older information known to law enforcement to give rise to a reasonable suspicion there were narcotics in the vehicle at the time of the March 8, 2020, stop. Mr. Barragan is Mr. Corbine's son-in-law and lives in Denver. (Docket 62 at pp. 7-8). It is true facts "that, when considered individually, are consistent with innocent travel can, when taken together, amount to reasonable suspicion." United States v. Scott, 818 F.3d 424, 431 (8th Cir. 2016). But a single trip to Denver by family members the better part of a year after the last information potentially tying those individuals to illegal narcotics activity does not, without more, revive the old information and combine with it

13

to create a reasonable suspicion the vehicle contained illegal narcotics when it was stopped on March 8, 2020, while traveling back to Rapid City.

      The trip to Denver may have taken on greater significance if law enforcement was able to point to additional factually related information arising during the intervening eight to nine months leading up to the trip to Denver, during the time the vehicle was in Denver in March 2020 or during the vehicle's return trip to Rapid City. However, neither Trooper Jackson nor Detective Bloomenrader provided testimony about any information more recent than June and July of 2019 which would indicate Mr. Corbine's or Mr. Barragan's continuing involvement in illegal drug activity. The fact law enforcement did not learn about some of the information from the first half of 2019 until later that year in November does not freshen that information. Nor does the fact law enforcement did not apply for a state warrant to track the vehicle until February 2020 freshen any of the information from 2018 and the first half of 2019 upon which application for that warrant was presumably made.

      Furthermore, Trooper Jackson and Detective Bloomenrader did not testify to any facts arising during the timeframe the vehicle was in Denver that would support a suspicion that the vehicle was utilized for or that Mr. Barragan and Mr. Corbine were involved in narcotics activity in Denver in March 2020. Neither officer testified to any facts they personally observed

14

about the vehicle or its occupants during its return trip to Rapid City that support a suspicion it was carrying drugs at that particular time.

In some cases, months-old information combines with newer information to show a pattern of illegal activity with no indication the activity has ceased, but here there is no newer information articulated by law enforcement to indicate illegal activity by Mr. Barragan or Mr. Corbine may have continued. The trip to Denver many months after the last information known to law enforcement connecting the defendants to drug distribution, without more, is not a sufficiently particularized basis to form a reasonable suspicion the vehicle was carrying illegal drugs at the time of the March 8, 2020, stop. Evidence of past criminal activity that could be ongoing without any corroborating information suggesting it actually is does not indefinitely subject a person to investigative stops.

Lacking both probable cause to conduct the stop based on a violation of SDCL § 32-5-98 and reasonable suspicion to conduct the stop based on the ongoing drug investigation, the March 8, 2020, stop was not constitutional.

## ORDER

Based on the above reasons, it is

ORDERED that defendants' objections to the report and recommendation (Docket 79) are sustained.

IT IS FURTHER ORDERED that the report and recommendation (Docket 71) is adopted in part and rejected in part, consistent with this order.

IT IS FURTHER ORDERED that defendant Ricardo Barragan's motion to suppress (Docket 44) is granted. Defendant Melvin Corbine's motion to join in the motion to suppress (Docket 46) is granted.

IT IS FURTHER ORDERED that a scheduling order shall issue.

Dated August 5, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE